IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 06–cv–02527–EWN–BNB

THUNDER MOUNTAIN CUSTOM
CYCLES, INC., a Colorado corporation,

      Plaintiff,

v.

JIM THIESSEN, d/b/a JIMS, and
THIESSEN PRODUCTS, INC.,

      Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is a contracts case. Plaintiff Thunder Mountain Custom Cycles, Inc., alleges

Defendants Jim Thiessen and Thiessen Products, Inc. (hereinafter "TPI"), breached express and

implied warranties with respect to the sale of motorcycle transmissions and engines to Plaintiff.

Defendant TPI asserts eight contractual counterclaims against Plaintiff. This matter is before the

court on: (1) "Defendant Jim Thiessen's Motion to Dismiss Plaintiff's Amended Complaint," filed

November 2, 2007; (2) "Defendants' Renewed Motion for Summary Judgment on Plaintiff's

Amended Complaint," filed November 19, 2007; and (3) "Defendants' Motion and Incorporated

Memorandum to Dismiss for Failure to Comply with Discovery Order," filed November 27, 2007.[1]  Jurisdiction is premised upon diversity of citizenship under 28 U.S.C. § 1332.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant TPI is engaged in the manufacture of motorcycle transmissions and engines, and Plaintiff is engaged in the design and manufacture of custom motorcycles, which it primarily sells to dealers.  (*See generally* Notice of Removal [hereinafter "Notice of Removal"], Ex. B. ¶¶ 1–5 [Compl.] [filed Dec. 15, 2006].)  "Jim's Machining" is the registered trade name of Defendant TPI, a California corporation for which Defendant Thiessen works and of which he is apparently a shareholder.  (*See generally* Def.'s Dis. Br., Ex. C [Arts. of Incorporation], Ex. D [Trade Name Registration].)

### 1.    *Complaint, Service of Process, Removal*

_____

[1]Defendant Thiessen's motion to dismiss and Defendants' renewed motion for summary judgment incorporate by reference Defendant Thiessen's earlier motion to dismiss and motion for summary judgment filed before Plaintiff had amended its complaint to join Defendant TPI.  (*See* Def. Jim Thiessen's Mot. to Dismiss Pl.'s Am. Compl. at 1 [filed Nov. 2, 2007] [hereinafter "Def.'s Am. Dis. Br."]; Defs.' Renewed Mot. for Summ. J. on Pl.'s Am. Compl. at 1–2 [filed Nov. 19, 2007] [hereinafter "Defs.' Renewed Summ. J. Br."].)  Accordingly, I deny as moot Defendant Thiessen's earlier-filed motion to dismiss (#47) as directed at an inoperative pleading, and his earlier-filed motion for summary judgment (#70) as duplicative of the summary judgment motion presently at bar.  (*See* Def.'s Mot. to Dismiss and Incorporated Mem. [filed May 1, 2007] [hereinafter "Def.'s Dis. Br."]; Def.'s Mot. for Summ. J. [filed Aug. 15, 2007] [hereinafter "Def.'s Mot. for Summ. J."].)  Moreover, as all parties agree, I will decide the instant motions on the force of each party's erstwhile briefing on Defendant Thiessen's now-mooted motions.  (*See* Def.'s Am. Dis. Br. at 1; Pl.'s Resp. to Def. Jim Thiessen's Mot. to Dismiss Pl.'s Am. Compl. at 1–2 [filed Nov. 11, 2007] [hereinafter "Pl.'s Am. Dis. Resp."]; Defs.' Renewed Summ. J. Br. at 1–2; Pl.'s Resp. to Defs.' Renewed Mot. for Summ. J. on Pl.'s Am. Compl. [filed Dec. 31, 2007] [hereinafter "Pl.'s Renewed Summ. J. Resp."].)

On November 16, 2006, Plaintiff filed a complaint in Larimer County District Court against Defendant Thiessen,[2] alleging breach of express and implied warranties relating to the sale of motorcycle transmissions and engines to Plaintiff by a person or entity known as "JIMS." (*See* Notice of Removal, Ex. B. [Compl.].)  Plaintiff alleged that JIMS represented it would manufacture transmissions and engines for Plaintiff's use in its custom-built motorcycles, but failed to deliver conforming products.  (*See id.*, Ex. B ¶¶ 14–36 [Compl.].)  Plaintiff asserted that purchasers of its motorcycles complained of leaking transmissions, and that engines it acquired from JIMS were "defective and totally unsuitable for use."  (*Id.*, Ex. B ¶¶ 21, 23 [Compl.].)  As to damages, Plaintiff alleged it had: (1) incurred costs in answering the warranty claims of these purchasers; (2) been forced to shut down portions of its production due to defective JIMS products; and (3) suffered damage to its business reputation.  (*Id.*, Ex. B ¶¶ 21, 24–27 [Compl.].)

The initial complaint was vague as to the person or entity from whom Plaintiff believed it had purchased the transmissions and engines.  (*See id.*, Ex. B ¶¶ 1–16 [Compl.].)  In addition to directing all of its factual allegations against "JIMS," Plaintiff alleged that "[Defendant Thiessen] [was] the owner and principal of JIMS."  (*See id.*, Ex. B. ¶ 3 [Compl.].)  Plaintiff's subsequent amended complaint arguably suggests that Plaintiff believed "JIMS" to have been a "separate entity" from Defendant TPI at the time of the sales.  (*See* Pl.'s Am. Compl. ¶ 13 [filed Oct. 26, 2007] [hereinafter "Am. Compl."].)  The amended complaint may also be read to suggest that

---

[2]Specifically, the complaint captions the defendant as "Jim Thiessen dba JIMS."  (Notice of Removal, Ex. B. at 2 [Compl.].)

Plaintiff believed "JIMS" to have been the name of a sole proprietorship operated by Defendant Thiessen at the time of the sales. (*See id.*)

On November 16, 2006, despite having sued Defendant *Jim* Thiessen personally, Plaintiff served its summons and complaint upon *Jay* Thiessen, Defendant TPI's registered agent for service of process. (*See* Def.'s Dis. Br., Ex. A at 2 [Aff. of Service], Ex. B at 2 [Registered Agent Info.].) On December 15, 2006, Defendant TPI removed to this court, apparently believing that Plaintiff had meant to sue it rather than Defendant Thiessen. (*See* Notice of Removal.)

**2.      *Defendant TPI's Defense of the Action, Magistrate Judge Boland's Order Striking Defendant TPI's Pleadings***

On January 22, 2007, despite the fact that it was not a party to the action, Defendant TPI answered Plaintiff's complaint, and by late February 2007, had begun serving discovery requests upon Plaintiff. (*See* Answer, Separate Defenses and Countercl. [filed Jan. 22, 2007] [hereinafter "Answer"]; Defs.' Mot. and Incorporated Mem. to Dismiss for Failure to Comply with Disc. Order [hereinafter "Defs.' Disc. Br."], Ex. A at 11 [2/27/07 Requests] [filed Nov. 27, 2007].) Plaintiff appears never to have objected to Defendant TPI's defense of its action against Defendant Thiessen.

On March 28, 2007, Defendant TPI filed a motion to dismiss Plaintiff's claims against Defendant Thiessen, arguing that Plaintiff's complaint stated no viable claims against Defendant Thiessen personally as opposed to against Defendant TPI. (*See* Def.'s Mot. and Incorporated Mem. to Dismiss Pl.'s Claims Against Jim Thiessen [filed Mar. 28, 2007].) On April 20, 2007, Magistrate Judge Boland struck Defendant TPI's answer and its motion to dismiss on the grounds

that "[t]here is no provision in the Federal Rules of Civil Procedure by which a non-party, in this case [Defendant TPI], may enter a case and unilaterally redefine the identity of the defendant." (Order at 3 [filed Apr. 20, 2007] [hereinafter "Strike Order"].)  Assuming that Defendant Thiessen had nonetheless been served because the parties had failed to alert him otherwise, Magistrate Judge Boland ordered Defendant Thiessen to respond to Plaintiff's complaint by May 4, 2007.  (*See id.* at 2 n.1, 3 [stating assumption that Jim and Jay Thiessen were the same individual, and that the former had therefore been served].)

3.      ***Defendant Thiessen's First Motion to Dismiss***

On May 1, 2007, Defendant Thiessen filed a motion to dismiss Plaintiff's complaint on the grounds that: (1) he had not been served; and (2) Plaintiff's complaint stated no cause of action against him personally as opposed to against Defendant TPI.  (*See* Def.'s Dis. Br. at 3–7.)  On May 10, 2007, Plaintiff responded, arguing that: (1) Defendant Thiessen had waived his right to object to insufficient service of process because Defendant TPI had previously appeared in the action; and (2) Defendant Thiessen was personally liable on its claims referring to actions by "JIMS."  (*See* Pl.'s Resp. to Def.'s Mot. to Dismiss and Incorporated Mem. at 3–9 [filed May 10, 2007] [hereinafter "Pl.'s Dis. Resp."].)  On May 25, 2007, Defendant Thiessen replied.  (*See* Def.'s Reply in Further Supp. of Mot. to Dismiss [filed May 25, 2007] [hereinafter "Def.'s Dis. Reply"].)

4.      ***Motion to Compel, Discovery Order, Discovery Misconduct***

On June 4, 2007, Defendant Thiessen filed a motion to compel, arguing that Plaintiff had failed to adequately respond to discovery requests Defendant TPI had served before Magistrate

Judge Boland had struck its pleadings. (*See* Def.'s Mot. to Compel at 1–2 [filed June 4, 2007] [hereinafter "Mot. to Compel"].) The evidence demonstrates that, in late February 2007, Defendant TPI had served production requests upon Plaintiff requesting, *inter alia*, all documents pertaining to warranty claims made by motorcycle purchasers which were unrelated to JIMS products, and all non-privileged documents pertaining to litigation between Plaintiff and its dealers. (*See* Defs.' Disc. Br., Ex. A ¶¶ 14, 21, 28–29 [2/27/07 Requests].) The record also shows that, at this same time, Defendant TPI had served interrogatories upon Plaintiff asking it to identify all litigation to which Plaintiff had been a party. (*See id.*, Ex. B ¶ 10 [2/27/07 Interrogs.].) In his June 4, 2007, motion to compel, Defendant Thiessen argued that Plaintiff had "failed to adhere to its discovery obligations by not fully responding to discovery requests, by not producing responsive documents, and by not responding to document requests at all." (Mot. to Compel at 1–2.)

On June 22, 2007, Plaintiff responded to this motion, claiming in part that any outstanding discovery requests which had been served by Defendant TPI rather than by Defendant Thiessen were either void or should be quashed. (*See* Resp. to Def.'s Mot. to Compel [filed June 22, 2007].) On June 26, 2007, Defendant Thiessen replied, arguing that Plaintiff's *post hoc* rationalization for its failure to respond to Defendant TPI's discovery requests was both disingenuous and untimely because Plaintiff had not properly objected when these requests were served. (*See* Reply in Supp. of Mot. to Compel [filed June 26, 2007].)

On June 29, 2007, Magistrate Judge Boland granted Defendant Thiessen's motion, ordering Plaintiff to fully respond to all outstanding discovery requests by July 10, 2007, and

stating that all such requests would be "construed as having been made by [Defendant Thiessen]." (*See* Order at 1 [filed June 29, 2007] [hereinafter "Disc. Order"].)

On August 1, 2007, Defendant Thiessen took the deposition of Todd Ermann, Plaintiff's president and controlling shareholder. (*See* Defs.' Disc. Br. at 5.) After being questioned about lawsuits involving Plaintiff, Mr. Ermann allegedly failed to disclose at least two such lawsuits between Plaintiff and its dealers in Colorado.[3] (*See id.* at 5–6; *see also id.*, Ex. H [Daytona Compl.]; Ex. I [Maehal Compl.].)

On August 14, 2007, Defendant Thiessen took the deposition of Danielle Scaramuzzo, Plaintiff's warranty manager. (*See id.* at 4; Defs.' Disc. Reply, Ex. A [Scaramuzzo Dep.].) During this deposition, Ms. Scaramuzzo revealed for the first time that Plaintiff had kept logs of warranty claims filed against it by customers and dealers that were unrelated to problems with JIMS products. (*See* Defs.' Disc. Br. at 4–5.) Defendants allege that such logs were not provided to Defendant Thiessen until the following day, which was also the dispositive motion deadline. (*See id.*)

## 5.     *Defendant Thiessen's Motion for Summary Judgment, Joinder of Defendant TPI*

On August 15, 2007, Defendant Thiessen filed a motion for summary judgment against Plaintiff. (*See* Def.'s Summ. J. Br.) Defendant Thiessen argued that Plaintiff had not given

_____

[3]Defendants cite pages 137–40 of Mr. Erdmann's deposition for these facts, but fail to append these pages to their brief. (*See* Defs.' Disc. Br. at 5–6.) Plaintiff does not dispute that Mr. Erdmann failed to disclose these lawsuits, but takes issue with his scienter in making this omission. (*See* Pl.'s Opp'n to Defs.' Mot. to Dismiss for Failure to Comply with Disc. Order at 6–7 [filed Jan. 7, 2008] [hereinafter "Pl.'s Disc. Resp."].)

adequate notice of defect on all the transmissions and engines sold to it as is required to maintain

its claims, and could not demonstrate direct or consequential damages flowing from the allegedly

defective products.  (*See id.* at 15–27.)  I first present the facts relevant to Defendant Thiessen's

arguments, and then present those facts relevant to the parties' procedural re-posturing in the

wake of this motion.

> ### a.  *Facts Relevant to Defendant Thiessen's Motion*

The parties' briefing on Defendant Thiessen's motion for summary judgement shows that,

in September 2005, Plaintiff had begun submitting purchase orders for JIMS transmissions, and

that Defendants eventually shipped 603 such transmissions pursuant to those orders.  (*See* Def.'s

Summ. J. Br., Statement of Undisputed Material Fact [hereinafter "SOF"] ¶ 1.)[4]  Likewise, the

evidence shows that, in May 2006, Plaintiff had begun submitting purchase orders for Defendants'

engines, and Defendants eventually shipped 147 such engines.  (*See id.*, SOF ¶ 2.)

In December 2005, Plaintiff informed Defendants that some of the transmissions shipped

to it were leaking oil.  (*See id.*, SOF ¶ 4.)  Between December 2005 and the filing of the instant

action, Plaintiff informed Defendants of alleged problems in approximately seventy of the 603

transmissions shipped to it.  (*See id.*, SOF ¶ 6.)  Likewise, Plaintiff informed Defendants of

alleged problems with approximately six of the 147 engines shipped to it.  (*See id.*, SOF ¶ 7.)

---

[4]As discussed below, Plaintiff failed to follow this court's practice standard in either admitting or denying Defendants' proffered facts.  (*See* Analysis § 3(b), *infra.*)  Nonetheless, because very little of my analysis of Defendants' renewed motion for summary judgement turns upon Plaintiff's admission or denial of Defendant Thiessen's proffered facts, I analyze the effect of Plaintiff's non-complying response to Defendant Thiessen's factual proffers in the body of my order.  (*See id.*)

As to direct damages, Plaintiff's damage expert estimates that Plaintiff spent $39,373 in rebuilding and repairing motorcycles with allegedly defective transmissions and engines through March 2007, and predicts that its total costs after future pairs will reach around $75,000. (*See* Pl.'s Mem. in Opp. to Summ. J. [hereinafter "Pl.'s Summ. J. Resp."], Ex. 8 at 5 [McKibben Report] [filed Sep. 5, 2007].) In addition, this expert claims that Plaintiff incurred in $21,417 in labor expenses when its employees assisted Defendants' employees in attempting to repair some of the allegedly defective parts in December 2005. (*See id.*) As to consequential damages, Plaintiff's expert asserts that Plaintiff lost $1,972,942 on potential *future* sales of its motorcycles, and incurred a total of $463,062 in penalty interest, loan fees, and loan interest costs relating to past-due payments to *another* parts supplier, which Plaintiff claims it became unable to pay due to "loss of revenue suffered . . . because of JIMS [sic] defective parts." (*See id.* at 7, Ex. 8 at 5–6 [McKibben Report].)

### b.     *Plaintiff's Response to Defendant Thiessen's Motion*

On August 24, 2007, before responding to Defendant Thiessen's motion, Plaintiff moved to join Defendant TPI as an alternate defendant. (*See* Pl.'s Mot. to Join Alternate Def. [filed Aug. 24, 2007].) On August 30, 2007, Magistrate Judge Boland denied this motion, citing Plaintiff's own erstwhile contention that "the complaint was against an individual and his sole proprietorship, and not against the corporation." (*See* Order at 1 [filed Aug. 30, 2007].)

On September 5, 2007, Plaintiff responded to Defendant Thiessen's motion for summary judgment. (*See* Pl.'s Summ. J. Resp.) On September 20, 2007, Defendant Thiessen replied. (*See*

Def.'s Reply in Supp. of Mot. for Summ. J. [filed Sep. 20, 2007] [hereinafter "Def.'s Summ. J. Reply"].)

On October 19, 2007, Magistrate Judge Boland granted a stipulated motion to join Defendant TPI as a party, construing the parties' stipulation as "an unopposed motion to amend the complaint to add [Defendant TPI] as a defendant on claims identical to those asserted against [Defendant Thiessen]."  (*See* Order at 1 [filed Oct. 19, 2007] [hereinafter "Am. Compl. Order"].)  On October 26, 2007, Plaintiff amended its complaint, repeating the exact same allegations against "JIMS," but adding a statement that these claims were now being asserted "jointly against [Defendant Thiessen] and [Defendant TPI]." (Am. Compl. ¶ 14.)

6. ***Defendant Thiessen's Second Motion to Dismiss, Defendants' Renewed Motion for Summary Judgment***

On November 2, 2007, Defendant Thiessen filed the instant motion to dismiss Plaintiff's amended complaint.  (*See* Def.'s Am. Dis. Br.)  In this motion, he asserted he had *still* never been served, and incorporated by reference his earlier briefing with respect to his first motion to dismiss Plaintiff's complaint.  (*See id.* at 1.)  Plaintiff likewise responded by incorporating by reference its response to Defendant Thiessen's first motion to dismiss, and proffered no evidence showing that Defendant Thiessen had ever been served.  (*See* Pl.'s Am. Dis. Resp. at 1.)

On November 19, 2007, Defendants' renewed Defendant Thiessen's motion for summary judgment to ensure that any judgment would apply equally to Defendant Thiessen and Defendant TPI.  (*See* Defs.' Renewed Summ. J. Br.)  Both parties adopted by reference their earlier briefing

on Defendant Thiessen's summary judgment motion. (*See* Defs.' Renewed Summ. J. Br.; Pl.'s Renewed Summ. J. Resp.)

### 6.      *Defendants' Motion to Dismiss as Sanction for Discovery Misconduct*

On November 27, 2007, Defendants filed a motion to dismiss for discovery misconduct, arguing that Defendant Thiessen's and Defendants' original and renewed motions for summary judgment, respectively, had presented an incomplete defense because they had been premised upon incomplete information related to discovery withholdings by Plaintiff in contravention of Magistrate Judge Boland's order. (*See* Defs.' Disc. Br.) On January 7, 2008, Plaintiff responded to Defendants' motion. (*See* Pl.'s Disc. Resp.) On January 22, 2008, Defendants replied. (*See* Reply in Supp. of Mot. to Dismiss for Failure to Comply with Disc. Order [filed Jan. 22, 2008] [hereinafter "Defs.' Disc. Reply"].) All motions before this court are fully briefed and ripe for review.

## ANALYSIS

I analyze each outstanding motion separately as my holdings in each could affect my analyses of the remaining motions.

### 1.      *Defendant Thiessen's Motion to Dismiss*

Defendant Thiessen moves to dismiss Plaintiff's amended complaint as to him for: (1) insufficient service of process; and (2) failure to state a claim. (*See* Def.'s Dis. Br.) Because dismissal for failure to state a claim would be with prejudice, whereas dismissal for insufficient service of process would not, I consider Defendant Thiessen's second argument first after laying out the applicable legal standards.

### a.     *Legal Standard*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6) (2008).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).  All well-pleaded factual allegations in a complaint are accepted as true and construed in the light most favorable to the plaintiff.  *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).  Prior to the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1974 (2007), dismissal of a complaint was appropriate only when it appeared the plaintiff could prove no set of facts in support of the claims that would entitle him to relief.  *Coosewoon v. Meridian Oil Co.*, 25 F.3d 920, 924 (10th Cir. 1994).  In *Bell Atlantic*, the Supreme Court articulated a new "plausibility" standard, under which a complaint must include "enough facts to state a claim to relief that is plausible on its face."  127 S. Ct. at 1974.

Federal Rule of Civil Procedure 12(b)(5) provides that a defendant may move to dismiss a claim for "insufficient service of process."  Fed. R. Civ. P. 12(b)(5) (2008).  Rule 4(m), moreover, provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court — on motion or on its own after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m) (2008).  If a plaintiff shows good cause for his failure to timely serve a defendant, the

court must extend the time for service of process for an appropriate period.  *See id.*  Even if good cause is not shown, however, the court must still consider whether a permissive extension of time is warranted.  *See Espinoza v. United States*, 52 F.3d 838, 842 (10th Cir. 1995).  In making such a determination, the court should consider such factors as: (1) whether the applicable statute of limitations has expired; (2) whether the plaintiff is faced with the complex requirements of multiple service; and (3) whether the plaintiff's delay was related to *pro se* representation.  *See id.* at 842 & n.2; *see also Gumm v. Fed. Bureau of Prisons*, No. Civ–06–866–R, 2007 WL 3312785, at *3 (W.D. Okla. Nov. 6, 2007).

### b.    Evaluation

#### i.    Failure to State a Claim

Defendant Thiesssen argues that Plaintiff's allegations pertaining to "JIMS" fail to state a claim as to him because these allegations relate no specific acts by him personally, nor suggest any reason why he should be held liable for the debts of Defendant TPI under a corporate veil-piercing theory.  (*See* Def.'s Dis. Br. at 6–8.)  Plaintiff counters that his allegations pertaining to actions by JIMS *do* pertain to Defendant Thiessen personally, and that Defendant Thiessen is *directly* liable for such actions irrespective of whether he might be also liable for Defendant TPI's debts as a shareholder.  (*See* Pl.'s Dis. Resp. at 5–8.)  Defendant Thiessen replies that — irrespective of whether personal liability might otherwise lie against him for his actions — there are no allegations in Plaintiff's complaint suggesting that "[he] personally made representations concerning products and communicated with Plaintiff's personnel," and that Plaintiff has therefore failed to state breach of warranty claims *as to him*.  (Def.'s Dis. Reply at 5.)

The parties apparently do not dispute that Colorado law applies in this diversity action.[5] Under the Colorado common law of agency, "an agent who negotiates a contract with a third party can be sued for any breach of the contract unless the agent discloses both the fact that he or she is acting on behalf of a principal *and* the identity of the principal." *See Water, Waste & Land, Inc. v. Lanham*, 995 P.2d 997, 1001 (Colo. 1998) (emphasis in original). An agent is liable on contracts negotiated on behalf of a "partially disclosed" principal. *See id.* at 1002. Moreover, "[a] principal is partially disclosed if the agent discloses the existence of his agency but fails to disclose the true name or legal identity of his principal." *Flatiron Paving Co. v. Wilkin*, 725 P.2d 103, 106 (Colo. Ct. App. 1986).

In the instant case, I find that — irrespective of whether Defendant Thiessen might be liable for the debts of Defendant TPI under a corporate veil-piercing theory — Plaintiff has alleged facts sufficient to suggest that he might be *personally* liable on the contracts negotiated with Plaintiff under an agency theory for only partially disclosing the true name or legal identity of Defendant TPI. Read in the light most favorable to Plaintiff, its amended complaint suggests that Defendant Thiessen failed to disclose the true name or legal identity of Defendant TPI to Plaintiff. (*See* Am. Compl. ¶¶ 3, 13, 17–40.) Specifically, the complaint alleges that "[Defendant Thiessen] is the owner and principal of JIMS," and suggests that Defendant Thiessen's actions or inactions

---

[5] Both parties cite Colorado law in their summary judgement briefs, and Plaintiff never responds to or disputes Defendant Thiessen's choice-of-law analysis demonstrating that Colorado law applies. (*See* Def.'s Summ. J. Br. at 16 n.8; Pl.'s Summ. J. Resp.) Likewise, Defendant Thiessen cites Colorado law in his motion to dismiss, and Plaintiff never disputes the applicability thereof. (*See* Def.'s Dis. Br.; Pl.'s Dis. Resp.)

gave Plaintiff the impression that "JIMS" was a separate entity from Defendant TPI, and/or the trade name of a sole proprietorship operated by Defendant Thiessen. (*See id.* at ¶¶ 3, 13.) Moreover, Plaintiff's amended complaint contains absolutely no allegations suggesting that Plaintiff knew Defendant Thiessen was an agent of Defendant TPI — or that "JIMS" was the latter's trade name — at any time *prior* to the instigation of its lawsuit.[6] (*See id.* at ¶¶ 17–40.) As such, I find that Plaintiff has alleged facts sufficient to suggest that Defendant Thiessen failed to disclose the "true name or legal identity" of Defendant TPI, and that Plaintiff may therefore maintain its breach of warranty claims against Defendant Thiessen personally for his purported failure to fully disclose his principal. *See Flatiron Paving Co.*, 725 P.2d at 106.

In counseling against the above conclusion, Defendant Thiessen offers two inapposite arguments. First, he contends — on the force of unrefuted public records showing that Defendant TPI is a corporate entity operating under the trade name "Jim's Machining" — that "[Defendant Thiessen] undeniably is ***not*** the 'owner and/or principal of JIMS'" and that Plaintiff would have discovered this fact by checking the public records. (*See* Def.'s Dis. Br. at 6; Def.'s Dis. Reply at 4 [emphasis in original].) Even assuming I were to agree that such records could be considered in a motion to dismiss,[7] I would find them irrelevant because they suggest nothing about Defendant

---

[6]Plaintiff's only allegation pertaining to Defendant TPI reflects Plaintiff's knowledge — *acquired through the course of litigation* — that Defendant TPI was the corporate entity employing Defendant Thiessen, and that Defendant TPI conducted business under the trade name of "Jim's Machining." (*See* Am. Compl. ¶¶ 11–13.)

[7]Defendant Thiessen contends that the court may consider such evidence without converting his motion into one for summary judgment because it comes from public records. (*See* Def.'s Dis. Br. at 2 n.2.) Without explicitly addressing or refuting this assertion, Plaintiff simply

-15-

Thiessen's representations — or lack thereof — pertaining to his relationship to Defendant TPI, or to the latter's legal identity, as opposed to just the legal relationship between Defendant Thiessen and Defendant TPI and the latter's trade name. *See Water, Waste & Land, Inc.*, 995 P.2d at 1001 (stating that "the duty to disclose the identity as well as the existence of the principal lies with the agent").

Second, Defendant Thiessen contends that the complaint contains no allegations pertaining to Defendant Thiessen personally, so that — even assuming direct liability for breach of warranty might otherwise lie against him — Plaintiff has failed to allege any essential elements of its breach of warranty claims as against *him*, as opposed to against the entity known as "JIMS." (*See* Def.'s Dis. Br. at 6–7; Def.'s Dis. Reply at 5 .) I disagree. While this argument may have had purchase when made in the context Plaintiff's original complaint — to which Defendant Thiessen's briefing originally pertained — it is patently untrue as argued against the amended complaint. (*Compare* Notice of Removal, Ex. B. ¶ 3 [Compl.], *with* Am. Compl. ¶¶ 3, 13–14.) The amended complaint explicitly states that "[c]laims asserted . . . against JIMS are asserted jointly against [Defendant

---

incorporates by reference extrinsic evidence of its own to buttress its contention that its dealings with Defendant Thiessen left it believing that he was a sole proprietor, and/or that "JIMS" was not a corporate entity. (*See* Pl.'s Dis. Resp. at 6–7 [incorporating by reference business correspondence between Plaintiff and "JIMS" that had been appended to Plaintiff's response to Defendant TPI's stricken motion to dismiss].) Although I decline to consider either party's extrinsic evidence, I note that, even if I had converted Defendant's motion into one for summary judgment, Plaintiff's proffered evidence would have demonstrated a genuine issue of material fact as to whether Defendant Thiessen failed to disclose the true name or legal identity of Defendant TPI because Defendant TPI's letterhead refers simply to "JIMS" simpliciter without providing any indication that "JIMS" is the trade name of a corporate entity. (*See* Pl.'s Resp. to Def.'s Mot. and Incorporated Mem. to Dismiss Pl.'s Claims Against Jim Thiessen, Ex. 1–2 [Invoices] [filed Apr. 18, 2007].)

Thiessen] in his personal capacity and [Defendant TPI]." (Am. Compl. ¶ 14.) Thus, I find that these allegations — read in the light most favorable to Plaintiff — allege actions *both* by Defendant TPI *and* by Defendant Thiessen individually.[8] As such, I decline to hold that Plaintiff's complaint fails to allege the essential elements of breach of warranty claims against Defendant Thiessen.

### ii. *Failure to Serve Defendant Thiessen*

Defendant Thiessen next argues that Plaintiff's claims against him should be dismissed without prejudice because he remains unserved and more than 120 days have passed since Plaintiff filed its November 16, 2006, complaint. (*See* Def.'s Am. Dis. Br. at 1; Def.'s Dis. Br. at 3–4.) Plaintiff does not dispute this assertion, but instead argues that Defendant Thiessen has waived his objection to insufficient service of process by appearing in state court to remove the action, and by originally answering its complaint and defending the action. (*See* Pl.'s Dis. Resp. at 3–5.) Defendant Thiessen replies that these actions were taken by Defendant TPI, and in any event would not have constituted a waiver of his jurisdictional argument. (*See* Def.'s Dis. Reply at 2–4.)

Objections to service of process must be asserted in an answer or a pre-answer motion. *See F.D.I.C. v. Oaklawn Apartments*, 959 F.2d 170, 175 (10th Cir. 1992). Objections to service

---

[8]Moreover, this holding comports with Magistrate Judge Boland's order permitting Plaintiff to amend its complaint, in which the magistrate judge stated that "the Stipulation is construed as an unopposed motion to amend the complaint to add [Defendant TPI] as a defendant on claims identical to those asserted against [Defendant Thiessen]." (*See* Am. Compl. Order at 1.)

of process constitute a personal defense to a court's jurisdiction over a party and may be waived by that party. *See id.* at 174–75. A petition to remove to federal court does not constitute a general appearance sufficient to waive objections to jurisdiction. *See Barton v. Horowitz*, No. Civ. A. 97 N 1980, 1999 WL 502151, at *7 n.1 (D. Colo. Mar. 11, 1999) (collecting cases so holding).

In the instant case, Plaintiff makes no effort to demonstrate whether Defendant Thiessen or Defendant TPI appeared in Larimer County District Court to remove this action. (*See* Pl.'s Dis. Resp. at 3–5.) Nonetheless, I find that, even if Defendant Thiessen appeared in Larimer County District Court, this appearance would not have constituted a general appearance sufficient to waive his personal defense to this court's jurisdiction. *See Barton*, 1999 WL 502151, at *7 n.1. Conversely, I find that, if Defendant TPI appeared in Larimer County District Court, its actions could not have waived Defendant Thiessen's defense as this defense is *personal*, and can only be asserted or waived *by a party. See Oaklawn Apartments*, 959 F.2d at 175; *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 521 (10th Cir. 1994) (stating that a litigant's defense related to insufficient service of process was a "personal defense that could not be raised for [the litigant] by another party"). Likewise, I find that Defendant TPI's answering of Plaintiff's complaint and initial defense of the action do not constitute a waiver of Defendant Thiessen's personal defense both because: (1) Defendant TPI's actions cannot waive Defendant Thiessen's rights; and (2) the answer and motion to dismiss filed by Defendant TPI were stricken by Magistrate Judge Boland. *See id.*; (*see also* Strike Order at 3.) Accordingly, I find that Defendant Thiessen has not waived his personal defense of insufficiency of service.

On the merits of Defendant Thiessen's motion, I agree that Plaintiff's failure to timely serve him requires dismissal of its complaint as to him without prejudice. On November 16, 2006, Plaintiff filed its complaint against Defendant Thiessen. (*See* Notice of Removal, Ex. B. [Compl.].) As of the date of this order, Plaintiff has failed to show that it has served Defendant Thiessen, or to argue that its service upon Jay Thiessen effectuates service upon Defendant Thiessen.[9] (*See* Pl.'s Dis. Resp.; Pl.'s Am. Dis. Resp.) As such, I find that more than 120 days have passed since Plaintiff filed its original complaint and that I must accordingly either dismiss Plaintiff's complaint against Defendant Thiessen or grant an extension of time. *See* Fed. R. Civ. P. 4(m) (2008). Although neither party addressed the issue, I additionally find that the filing of Plaintiff's amended complaint on October 26, 2007, does not affect the timeliness of service of process upon Defendant Thiessen because "the 120-day period provided by Rule 4(m) is not restarted by the filing of an amended complaint except as to those defendants newly added in the amended complaint." *Bolden v. City of Topeka*, 441 F.3d 1129, 1148 (10th Cir. 2006).

Despite my authority to grant an extension of time for service, I find that Plaintiff has not demonstrated good cause therefor. Plaintiff was placed on notice of Defendant Thiessen's personal defense on several occasions, including through: (1) Magistrate Judge Boland's April 20, 2007, order striking Defendant TPI's pleadings; (2) Defendant Thiessen's May 1, 2007, motion to

---

[9]Defendant Thiessen persuasively argues against such a possibility because service upon Jay Thiessen: (1) was not personal service upon him; (2) was not service upon a family member in his usual place of abode; and (3) was not service upon Defendant Thiessen's secretary, administrative assistant, bookkeeper, or managing agent at his usual workplace. (*See* Def.'s Dis. Br. at 4 [citing requirements for service of process under Colorado law].) Plaintiff ignores these arguments. (*See* Pl.'s Dis. Resp.)

dismiss; and (3) Defendant Thiessen's November 2, 2007, renewal of this motion to dismiss. (*See* Strike Order at 2 n.1; Def.'s Dis. Br. at 3–4; Def.'s Am. Dis. Br. at 1.) Nonetheless, Plaintiff has neither moved for an extension of time nor presented any argument as to why its failure to timely serve Defendant Thiessen should be excused for good cause.[10] Indeed, Plaintiff's only allusion to the possibility of an extension of time is the single sentence in its response to Defendant Thiessen's first motion to dismiss stating that, under Rule 4(m), "the Court could, upon motion, permit a specified time" in which to allow Plaintiff to rectify its mistake. (*See* Pl.'s Dis. Resp. at 4.) Because mere acknowledgment this court's power does not constitute an argument for the exercise thereof, and because this sentence moreover indicates that Plaintiff's *knew* the procedural steps it had to take to show that it was entitled to an extension of time, I find that — despite having multiple opportunities — Plaintiff has failed to argue, and *a fortiori* has failed to prove, that an extension of time to serve Defendant Thiessen is warranted. *See Jones v. Frank*, 973 F.2d 872 (10th Cir. 1992) (affirming dismissal where plaintiff was put on repeated notice of the alleged insufficiency of service and knew the procedural steps that would be required to effectuate proper service).

Finally, I exercise my discretion not to issue an extension of time notwithstanding Plaintiff's failure to show good cause. *See Espinoza*, 52 F.3d at 842 (requiring district courts to

---

[10]Instead, Plaintiff attempts to shift the blame away from its mistake by arguing that granting Defendant Thiessen's motion "would in essence reward [Defendant Thiessen]" for Defendant TPI's initial mistake in responding to its complaint. (*See* Pl.'s Dis. Resp. at 4.) While Defendant Thiessen vigorously disputes this assertion, I need not consider it further as Plaintiff has cited no law suggesting that an adversary's procedural missteps may excuse one's own.

consider discretionary extension of time even when no good cause is demonstrated). Although

Plaintiff has wholly abdicated its responsibility of pointing me toward any evidence helpful in

making this determination, I find the record before me nonetheless demonstrates that none of the

relevant factors contemplated by *Espinoza* militate toward granting a discretionary extension. *See*

*Espinoza*, 52 F.3d at 842 & n.2. First, the record strongly suggests that the applicable statute of

limitations would not bar Plaintiff from refiling its action against Defendant Thiessen because: (1)

Plaintiff alleges it discovered defects in the transmissions in late 2005; and (2) Colorado's three-

year statute of limitations on contract actions is subject to the discovery rule of claim accrual.

(*See* Pl.'s Summ. J. Resp. at 3, 12 [arguing that Plaintiff discovered alleged problems with the

transmissions "only weeks after the first transmissions were received" in December 2005]); Colo.

Rev. Stat. § 13–80–101(1)(a) (2007) (providing three-year statute of limitations for contract

actions); *State Farm. Mut. Auto. Ins. Co. v. Springle*, 870 P.3d 578, 579 (Colo. Ct. App. 1993)

(applying discovery rule to contract actions). Second, the record nowhere suggests that service

upon Defendant Thiessen would present any of the complex requirements that were present in

*Espinoza*. *See* 52 F.3d at 842. Finally, Plaintiff is not proceeding *pro se*, so its failure to either

serve Defendant Thiessen or demonstrate good cause therefor cannot be attributed to "the

consequences of confusion or delay attending the resolution of an *in forma pauperis* petition."

*Id.*, 52 F.3d at 842 n.8.

In short, because (1) Plaintiff's failure to serve Defendant Thiessen or demonstrate good

cause therefor appears to derive solely from Plaintiff's ignorance of or disregard for clearly

established law, (2) Plaintiff has refused to acknowledge or rectify its mistake despite having

ample opportunity to do so, and (3) none of relevant factors militate toward granting Plaintiff a discretionary extension of time, I find that Plaintiff's complaint against Defendant Thiessen must be dismissed without prejudice.

**2.    *Defendants' Motion to Dismiss for Discovery Misconduct***

Defendants also argue that Plaintiff's amended complaint should be dismissed as a sanction for disobeying Magistrate Judge Boland's discovery order.  (*See* Defs.' Disc. Br.)

**a.    *Legal Standard***

Federal Rule of Civil Procedure 37(b)(2)(a) permits a court to issue a variety of sanctions for violations of a discovery order, including dismissal of an action.  Fed. R. Civ. P. 37(b)(2)(a)(i) (2008).  Because of the harshness of the sanction, however, due process requires that dismissal be premised upon willfulness, bad faith, or some fault on the part of the violating party rather than mere inability to comply.  *See Archibeque v. Atchison, Topeka, & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1992) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 640 [1976]).  Tenth Circuit law provides five non-exclusive factors to consider in deciding whether to dismiss for violation of a discovery order: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions.  *Id.*  Rule 37(b)(2)(a) also permits less dramatic sanctions, such as the preclusion of a party's ability to support or oppose designated claims or defenses at trial.  Fed. R. Civ. P. 37(b)(2)(a)(i) (2008).  Any sanction

a court imposes must be both just and related to the particular claim that was at issue in the order to provide discovery. *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992).

### b.    Evaluation

Defendants claim that all five above-mentioned factors militate toward dismissal, but alternatively assert that the lesser sanction of preventing Plaintiff from presenting evidence as to its alleged lost profits and/or damage to business reputation would be appropriate as well. (*See* Defs.' Disc. Br. at 7–14.) Plaintiff denies that it violated Magistrate Judge Boland's discovery order, but argues for imposition of Defendants' lesser-contemplated sanctions should any sanction be appropriate. (*See* Pl.'s Disc. Resp. at 2–8.) Because the parties dispute whether Plaintiff even violated Magistrate Judge Boland's discovery order, I first discuss the evidence pertaining thereto, and then analyze the effect of such violation under the five-factor test stated *supra*.

### i.    Plaintiff's Violation of Magistrate Judge Boland's Discovery Order

Defendants essentially contend that Plaintiff: (1) failed to timely produce records of all warranty claims asserted against it in order to conceal the nature and extent of problems with its motorcycles unrelated to JIMS transmissions and engines; and (2) failed to identify litigation with its dealers, produce relevant documents pertaining thereto, and misrepresented facts relevant to such litigation in a deposition. (*See* Defs.' Disc. Br. at 4–7.) I consider each allegation in turn.

A. FAILURE TO TIMELY PRODUCE WARRANTY RECORDS — Defendants first allege that Plaintiff violated Magistrate Judge Boland's discovery order by failing to produce a log of warranty claims asserted against it for problems unrelated to JIMS transmissions and engines until *after* Defendant Thiessen had learned of the existence of this log through a deposition. (*See*

Defs.' Disc. Br. at 4–5.)  Specifically, Defendants proffer Defendant TPI's February 27, 2007,

production requests in which it asked for, *inter alia*: (1) "All documents concerning warranty

claims on any motorcycles manufactured, assembled, modified or serviced by you in the past five

years;" and (2) "All documents concerning customer satisfaction or dissatisfaction with any

motorcycle manufactured, assembled, modified or serviced by you without JIMS engines or

[transmissions] installed."  (*Id.*, Ex. A ¶¶ 14, 21 [2/27/07 Requests].)  Moreover, Defendants

point to Magistrate Judge Boland's June 29, 2007, order compelling Plaintiff to "fully respond to

the discovery requests on or before July 10, 2007."  (*See id.* at 4; *see also* Disc. Order at 1.)

Finally, Defendants contend that Defendant Thiessen first learned of the existence of a log listing

380 warranty claims asserted against Plaintiff unrelated to JIMS transmissions and engines during

his August 14, 2007, deposition of Ms. Scaramuzzo.  (*See* Defs.' Disc. Br. at 4.)  Defendants

allege this log was not produced until August 15, 2007, and that similar logs for other years were

not produced until later.  (*See id.*)

In response to these allegations, Plaintiff offers the single unsubstantiated sentence that:

"Ms. Scaramuzzo . . . has advised Plaintiff that the actual information in the logs had been

previously produced although not necessarily in the format that was discussed at her deposition."

(*See* Pl.'s Disc. Resp. at 3–4.)  Defendants reply that this assertion is unsupported by any

evidence, and is moreover belied by: (1) Ms. Scaramuzzo's own deposition testimony in which

she stated her belief that Plaintiff had previously produced records of warranty claims *only*

relating to JIMS products; and (2) declaration testimony from Defendants' counsel's paralegal

stating that the *total* number of warranty claims previously disclosed to Defendants in Rule 26

disclosures and in response to discovery requests was ninety-four.  (*See* Defs.' Disc. Reply at 3–4, Ex. A. at 3 [Scarmuzzo Dep.], Ex. 1 ¶ 3 [Hutchens Decl.].)

On the force of Defendants' proffered evidence, and in consideration of Plaintiff's unconvincing response thereto, I find that Plaintiff failed to fully respond to Defendants' production requests by not producing the logs listing warranty claims unrelated to problems with JIMS products by July 10, 2007, despite being under court order to do so.  (*See* Disc. Order.)

B. FAILURE TO PRODUCE RECORDS PERTAINING TO LITIGATION AND RELATED MISREPRESENTATIONS — Defendants next allege that Plaintiff violated Magistrate Judge Boland's order by not identifying litigation with its dealers, not producing requested documents related thereto, and misrepresenting facts related to such litigation in a deposition.  (*See* Defs.' Disc. Br. at 5–7.)  Specifically, Defendants proffer their February 27, 2007, interrogatories stating: "Identify each lawsuit to which you've been a party, including the name of the adverse party or parties, the date the lawsuit was filed, the court in which the case was filed, and the disposition of the case."  (*Id.*, Ex. B ¶ 10 [2/27/07 Interrogs.].)  Defendants allege that Plaintiff never responded to this interrogatory despite writing that such a response would be forthcoming "in a supplemental response."  (*See id.* at 5, Ex. F ¶ 10 [3/29/07 Interrogs. Resp.].)  Moreover, Defendants point to their February 27, 2007, requests for production of "all non-privileged documents concerning any litigation, or potential or threatened litigation," between Plaintiff and any of its dealers or suppliers of parts for its motorcycles.  (*See id.*, Ex. A. ¶¶ 28–29 [2/27/07 Requests].)  Defendants allege that Plaintiff never provided such documentation, and, instead, answered that such documents were available for inspection at Plaintiff's business.  (*See id.* at 5, Ex. 8 [3/30/07

Requests Resp.].)  Finally, Defendants allege that Mr. Erdmann repeatedly denied in his deposition that Plaintiff had been a party to more than the instant lawsuit, two personal injury actions, a suit related to a motorcycle rally, and a suit with a specific supplier.  (*See id.* at 5–6.) Defendants contend that this denial was false as their own subsequent investigation has revealed two undisclosed lawsuits between Plaintiff and its dealers in Colorado alone.[11]  (*See id.* at 6, Ex. H [Daytona Compl.], Ex. I [Maehal Compl.].)  Defendants assert that Plaintiff's failure to timely or fully respond to its February 27, 2007, requests for production and interrogatories prove violation of Magistrate Judge Boland's order.  (*See id.*)

In response to this evidence, Plaintiff offers only the weakest and most inapposite of rejoinders, protesting that one of the suits independently discovered by Plaintiff was dismissed by the plaintiff, and the other "involves only franchising issues that contain no relevancy whatsoever to the issues in this case."[12]  (*See* Pl.'s Disc. Resp. at 4.)

On the force of Defendants' proffered evidence and Plaintiff's inapposite rejoinder thereto, I find that Plaintiff failed to fully respond to Defendants' interrogatory and production requests by not identifying and producing documentation relevant to its litigation with other parties prior to July 10, 2007, despite being under court order to do so.  (*See* Disc. Order.)

---

[11]Defendants apparently restricted their investigation to Colorado to save the expense of conducting searches in all states' dockets.  (*See* Defs.' Disc. Br. at 6 n.4.)

[12]As Defendants wryly point out, even the evidence Plaintiff proffers to substantiate these arguments — an order of dismissal in one of the actions — constitutes yet another document that was never timely disclosed or produced to them.  (*See* Pl.'s Disc. Resp., Ex. 1 [Order for Dismissal]; Defs.' Disc. Reply at 2.)

### ii.  *Degree of Prejudice to Defendants*

As to the effects of Plaintiff's discovery misconduct, Defendants contend that its wholesale withholding of some evidence and untimely disclosure of other evidence severely prejudiced their defense because the warranty claim and third-party litigation evidence cuts to the heart of Plaintiff's multimillion dollar claim for consequential damages derived from damage to its business reputation and a shutdown of motorcycle production purportedly caused by problems with JIMS products.  (*See* Defs.' Disc. Br. at 8.)  Specifically, Defendants argue that the withholding and untimely disclosure of evidence prevented it from: (1) effectively deposing witnesses; (2) obtaining fully informed expert opinions as to the true causes of Plaintiff's alleged lost profits; and (3) filing fully informed dispositive motions.  (*See id*. at 8–9.)  Defendants also allege that they have been prejudiced in having to incur the costs of preparing and filing their motions to compel and the instant motion for sanctions, and maintain that they would be further prejudiced if forced to "re-conduct much of the previously completed fact and expert discovery in light of previously-concealed information."  (*Id*. at 9.)

In response, Plaintiff makes the incredible argument that Defendants have not been prejudiced because: (1) "they in fact received the warranty logs and are indeed fully aware of the lawsuits of which they claim to have been mislead [sic];" (2) "they did in fact take numerous lengthy and extensive depositions;" and (3) have "in fact" both obtained expert opinions and filed a motion for summary judgment despite not timely having such evidence.  (*See* Pl.'s Disc. Resp. at 5–6.)  Furthermore, Plaintiff implies — albeit without evidentiary or record citation — that

discovery could have been reopened when it filed its amended complaint, but claims that it was

not so done "at the sole insistence of [Defendants]." (*See id.* at 6.)

I find that Plaintiff's contention that Defendants were not prejudiced because they (1)

eventually received some of the withheld information, and (2) managed to depose witnesses,

solicit expert reports, and prepare a summary judgment motion without this evidence, is

nonresponsive to Defendants' arguments — and frankly absurd. Moreover, I find Plaintiff's

contention that discovery was not reopened at Defendants' "sole insistence" unsupported by

citation or evidence. Even assuming this were true, moreover, it would be insufficient to refute

Defendants' contentions that they were prejudiced in having to incur the costs of conducting half-

blind discovery and filing their motions to compel and for sanctions, and that they would be

*further* prejudiced in having to conduct additional discovery in light of the now-revealed evidence.

As such, I find that the degree of prejudice accruing to Defendants is severe and that this factor

militates strongly toward dismissal. *See, e.g.*, *EBI Sec. Corp., Inc. v. Hamouth*, 219 F.R.D. 642,

648 (D. Colo. 2004) (finding severe prejudice in a plaintiff's withholding of evidence that "went

to the heart of [its] claims and the counterclaims asserted by [the defendant]," and which

prevented defendant from conducting "key discovery").

### iii.    *Amount of Interference with the Judicial Process*

Defendants allege that Plaintiff's discovery misconduct interfered with the judicial process

by: (1) violating Magistrate Judge Boland's discovery order; (2) violating this court's scheduling

order by necessitating discovery beyond the cut-off date; (3) forcing the court to address

Defendants' motions to compel and for sanctions; and (4) undermining the reliability of evidence in light of Mr. Erdmann's misrepresentations under oath. (*See* Defs.' Disc. Br. at 11–12.)

Plaintiff, by contrast, simply ignores the bulk of these arguments, but responds that "there is no evidence that Mr. Erdmann, or anyone else for that matter, is intentionally lying or attempting to cover up any facts surrounding litigation." (Pl.'s Disc. Resp. at 6–7.)

I find that — irrespective of whether Mr. Erdmann's misrepresentations under oath were intentional — Defendant has persuasively demonstrated substantial interference with the judicial process resulting from Plaintiff's discovery violations, and that this factor accordingly militates toward dismissal. *See, e.g.*, *Mobley v. McCormick*, 160 F.R.D. 559, 601 (D. Colo. 1995) (finding interference with the judicial process where a plaintiff "ignored court orders and thereby hindered the court's management of its docket and its effort to avoid unnecessary burdens on the court and the opposing party").

### iv. *Culpability of Plaintiff for Discovery Violations*

Defendants argue that Mr. Erdmann's misrepresentations under oath were Plaintiff's most egregious discovery violation, and contend that he is personally culpable for such misrepresentations. (*See* Defs.' Disc. Br. at 12.) Plaintiff tenuously responds that there is no proof Mr. Erdmann intentionally lied under oath. (Pl.'s Disc. Resp. at 6–7.)

I find the absence of direct evidence speaking to Mr. Erdmann's scienter in misrepresenting facts under oath irrelevant to my assessment of his culpability, and hold that he is directly culpable for his misrepresentations, irrespective of his state of mind in making them. First, as president and controlling shareholder of Plaintiff, I find Mr. Erdmann may reasonably be

expected to know of litigation pending against his company, and accordingly find Plaintiff's counsel's implicit suggestion to the contrary unbelievable. Second, even were I to assume that Mr. Erdmann honestly forgot about pending litigation against his company at the time of his deposition, I find that such temporary amnesia would not still absolve him from responsibility for this discovery violation, as Defendants were not any less damaged thereby. Finally, I note that Plaintiff does not even *dispute* Defendants' contention that Mr. Erdmann not only failed to disclose relevant litigation during his deposition, but *affirmatively denied* that any such litigation was pending, except for those cases discussed *supra*. (*See* Defs.' Disc. Br. at 5–6; Pl.'s Disc. Resp. at 4, 6–7.) As such, I find the evidence more than compelling to suggest that Mr. Erdmann is personally culpable for his misrepresentations under oath, and accordingly find that this factor accordingly militates toward dismissal.

### iv. *Advance Warning of Dismissal as a Likely Sanction*

Defendants do not claim that Plaintiff received advance warning of the possibility of dismissal, but maintain such warning is not always required, particularly when a litigant has lied under oath. (*See* Defs.' Disc. Br. at 12 [citing *Archibeque*, 70 F.3d at 1175; *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1045 (10th Cir. 2005)].) Plaintiff simply responds that "there has been no warning or admonition in this matter that any dismissal was forthcoming or indeed that any sanctions at all were being considered." (Pl.'s Disc. Resp. at 7.)

While I agree that advance warning of potential dismissal is not always required, the lack of advance warning in this case nonetheless militates against dismissal. Magistrate Judge Boland's discovery order neither notified Plaintiff of possibility of dismissal nor specified the

precise actions that might trigger such a sanction. (*See* Disc. Order.) Instead, the order simply directed Plaintiff to "fully respond to the discovery requests on or before July 10, 2007." (*See id.* at 1.) As such, I find this factor militates against dismissal.

### v.     *Efficacy of a Lesser Sanction*

Defendants argue that any sanction short of dismissal would be ineffective because Plaintiff has shown a willingness to ignore: (1) its discovery obligations; (2) the requirements of truthful testimony at deposition; and (3) this court's orders. (*See* Defs.' Disc. Br. at 13.) Moreover, Defendants contend that "because discovery has already closed and the deadlines for filing of dispositive motions and disclosure of experts already have passed, and because Defendants have been required to complete discovery, to disclose expert opinions, and to draft and file dispositive motions without crucial information concealed by Plaintiff, a lesser sanction will not cure the prejudice to Defendants." (*Id.*)

Plaintiff, by contrast, argues that Defendants' lesser-contemplated sanction of preventing it from presenting evidence as to alleged lost profits and/or damage to business reputation would be equally effective, and therefore that dismissal is not necessary. (*See* Pl.'s Disc. Resp. at 7.)

While I agree with Defendants that Plaintiff has demonstrated a deplorable willingness to ignore its discovery obligations and this court's orders, and have grave concerns as to whether such behavior might continue in the future, I nonetheless find that Defendants have failed — barely — to prove that any sanction short of dismissal would be ineffective. (*See* Defs.' Disc. Br. at 13.) The passing of the dispositive motion and discovery cut-off deadlines have certainly hamstrung Defendants' ability to defend this action, but only with respect to Plaintiff's claims for

consequential damages. Specifically, Plaintiff's withholding and untimely disclosure of the warranty claim and third-party litigation evidence have prevented Defendants from fully investigating whether factors *other* than the allegedly defective JIMS products might have contributed to *or caused* Plaintiff's alleged consequential damages, namely its: (1) $1,972,942 in alleged lost profits caused by a loss of *future* motorcycle sales; and (2) $463,062 in penalty interest, loan fees, and loan interest costs paid as a result of past-due payments to *another* parts supplier, which it claims resulted from a loss of revenue caused by defective JIMS products. (*See* Pl.'s Summ. J. Resp., Ex. 8 at 5–6 [McKibben Report].) By contrast, I find no discernable relationship between Plaintiff's discovery misconduct and its claimed *direct* damages, namely its: (1) $75,000 in alleged costs relating to the rebuilding and repairing motorcycles with defective JIMS products; and (2) $21,417 in labor expenses allegedly incurred when its employees assisted Defendants' employees in attempting to repair some of the parts. (*See id.*, Ex. 8 at 5 [McKibben Report].) Because I find that the lesser sanction of precluding Plaintiff from presenting evidence at trial relating to its alleged consequential damages would serve both the interests of deterrence and justice by preventing Plaintiff from recovering damages to which Defendants might have raised a more formidable defense had Plaintiff honored its discovery obligations, I find this factor militates against dismissal.

In sum, although I find dismissal is too harsh a sanction in light of the lack of advance warning to Plaintiff and the efficacy of a lesser sanction, I nonetheless note that Plaintiff's misconduct raises a serious question in this court's mind as to whether Plaintiff acted wilfully or in bad faith in withholding and not timely disclosing certain discovery materials. As such, although I

deny Defendants' motion to dismiss Plaintiff's complaint *in toto*, I impose the serious alternative sanction of preventing Plaintiff from presenting any evidence at trial relating to its alleged consequential damages, as outlined *supra*. Such a sanction is permitted under Rule 37(b)(2)(a)(i), is just, and is related to the claims that were at issue in Magistrate Judge Boland's discovery order. *See* Fed. R. Civ. P. 37(b)(2)(a)(i) (2008); *Ehrenhaus*, 965 F.2d at 920.

**3.     *Defendants' Summary Judgment Motion***

Defendants contend that they are entitled to summary judgment on Plaintiff's breach of warranty claims because Plaintiff: (1) cannot show it provided Defendants notice of defect on all the engines and transmissions delivered to it; and (2) cannot prove damages related to those products for which it did provide notice. (*See* Def.'s Summ. J. Br. at 15–28.)

**a.     *Legal Standard***

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2008); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in

the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e)(2) (2008). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

### b. Evaluation of Claims

#### i. Failure to Provide Notice of Defect

The parties do not dispute that Article 2 of the Uniform Commercial Code ("UCC") applies to Plaintiff's breach of warranty claims. (*See* Def.'s Summ. J. Br.; Pl.'s Summ. J. Resp.) Under Article 2 as adopted by statute in Colorado, a buyer accepts tendered goods if it: (1) signifies after reasonable opportunity to inspect the goods that they are conforming or will be accepted even if nonconforming; (2) fails to make an effective rejection; or (3) does any act inconsistent with the seller's ownership. Colo. Rev. Stat. § 4–2–606(1)(a)–(c) (2007). "A buyer is deemed to have accepted goods when, without making any effort to reject them, he receives the goods, processes them, and sells the finished product." *CMI Corp. v. Leemar Steel Co., Inc.*, 733 F.2d 1410, 1414 (10th Cir. 1984) (applying identical UCC provision under Oklahoma law).

Where tender of goods has been accepted, a buyer "must within reasonable time after he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy." Colo. Rev. Stat. § 4–2–607(3)(a) (2007); *see also Hoffman's Double Bar Pine Nursery v. Fyke*, 633 P.2d 516, 519 (Colo. Ct. App. 1981) ("[A]dequate notice pursuant to [section 4–2–607(3)(a)] is a condition precedent to recovery for breach of warranty.").

In the instant case, Defendants first argue there is no genuine dispute as to whether Plaintiff: (1) accepted the transmissions and engines within the meaning of Article 2; or (2) gave notice of defect on any but a small portion of these products as is required to maintain its breach of warranty claims. (*See* Def.'s Summ. J. Br. at 16–20.) Plaintiff denies that it accepted the goods, and alternatively maintains that the notice it *did* provide with respect to a subset of these goods precludes summary judgment. (*See* Pl.'s Summ J. Resp. at 10–13.) Defendants reply that partial summary judgement may issue with respect to goods for which Plaintiff did not provide notice, assuming that complete summary judgement is not granted on the basis of their damages argument. (*See* Def.'s Summ. J. Reply at 4 n.2.)

First, I find that there is no genuine dispute as to whether Plaintiff "accepted" the transmissions and engines within the meaning of Article 2. Defendants have proffered Plaintiff's own response to requests for admissions in which it admits to having sold motorcycles with JIMS transmissions and engines since October of 2006. (*See* Def.'s Summ. J. Br., Ex. A–1 ¶¶ 20–21 [Pl.'s Admiss. Resp.]); *see also Fabrica de Tejidos Imperial, S.A. v. Brandon Apparel*, 218 F. Supp. 974, 978 (N.D. Ill. 2002) ("Resale of goods — even *after* a timely rejection — has long been recognized as inconsistent with the seller's continued ownership and as constituting an

acceptance of the good.").  Moreover, Defendants proffer a declaration of Paul Platts, Defendant

TPI's Director of Product and Business Development, in which he states that: "[Plaintiff] . . . has

refused to return any of the engines or transmissions for which it has not paid."  (Decl. of Paul

Platts in Supp. of Def.'s Mot. for Summ. J. ¶ 11 [filed Aug. 15, 2007] [hereinafter "Platts

Decl."].)  Plaintiff, by contrast, neither addresses nor disputes this evidence, instead making the

theoretical argument that, because acceptance can be revoked under Article 2, and because

revocation cancels acceptance, a question of fact exists as to whether the goods were accepted.

(*See* Pl.'s Summ. J. Resp. at 11.)  I disagree.  Revocation requires a buyer to "apprise the seller

that the buyer wants to give back the goods and receive a substitute or money in return," and

Plaintiff has proffered no evidence suggesting that it either had such a desire or communicated it

to Defendants.  *Cissel Mfg. Co. v. Pack*, 36 P.3d 85, 89 (Colo. Ct. App. 2001).  As such, I find

that Plaintiff has failed to carry its burden of designating "specific facts showing that there is a

genuine issue for trial."  *Celotex*, 477 U.S. at 324.  Moreover, because Defendants' undisputed

evidence demonstrates acts by Plaintiff that are inconsistent with Defendants' continued

ownership of the transmissions and engines, I find there is an absence of genuine dispute as to

whether Plaintiff "accepted" such goods within the meaning of Article 2.  *See* Colo. Rev. Stat. §

4–2–606(1)(c) (2007); *see also CMI Corp*, 733 F.2d at 1414; *Hoffman's Double Bar Pine

Nursery*, 633 P.2d at 519.

Likewise, I find an absence of genuine dispute as to whether Plaintiff provided notice of

defect on any more than *seventy* of the transmissions or any more than *six* of the engines.

Defendants proffer Mr. Platts's declarations that: (1) "[b]etween December 2005 and the filing of

this suit, [Plaintiff] has provided [Defendants] with notice of claimed problems in approximately [seventy] of the 603 transmissions shipped to it;" and (2) "[b]etween May 2006 and the filing of this suit, [Plaintiff] has provided [Defendants] with notice of alleged problems in only approximately [six] of the 147 engines shipped to it." (*See* Platts Decl. ¶¶ 5–6.) Defendants moreover proffer Ms. Scaramuzzo's deposition testimony acknowledging that Plaintiff had only informed Defendants of problems with six engines as of November 2006.[13] (*See* Def.'s Summ. J. Br., Ex. A–12 at 77 [Scaramuzzo Dep.].) Plaintiff, by contrast, fails to cite any evidence casting doubt upon these numbers, but instead tries to avoid any admission or denial thereof by simply stating: (1) "Defendant admits to being informed of at least [seventy] problem transmissions prior to the plaintiff's filing of this suit;" and (2) "Defendant admits to being notified of at least [six] defective engines."[14] (*See* Pl.'s Summ. J. Resp. at 3.) Because such a sophistic non-admission, non-denial of Defendants' proffered facts fails to carry Plaintiff's burden of designating specific *facts* showing there is a genuine issue for trial on the *number* of transmissions and engines for

---

[13]Defendants additionally cite Mr. Erdmann's alleged deposition admission that only a small fraction of Defendants' transmissions exhibited any problems, but the page they cite for this testimony — page 187 — was not appended to their brief. (*See* Def.'s Summ. J. Br. at 10, Ex. A–5 [Erdmann Dep.].)

[14]The court notes that such semantic chicanery is flatly unacceptable, contravenes this court's practice standards, and would usually lead to a striking of Plaintiff's brief. (*See* Practice Standards — Civil: Special Instructions Concerning Motions for Summary Judgment ¶ 8.) Nonetheless, because the legal arguments in Plaintiff's brief were insubstantial on their face, I chose to overlook Plaintiff's non-complying responses to Defendants' proffered facts in order to resolve Defendants' motion on its merits. However, because Plaintiff has demonstrated a penchant for ignoring this court's orders and later claiming that harsh sanctions are inappropriate for want of advance warning, Plaintiff stands apprised that any future failure to follow this court's rules or orders will invite swift and severe sanctions.

which Plaintiff provided notice, I find that there is no genuine dispute as to whether Plaintiff provided notice on any more than *seventy* of the transmissions or any more than *six* of the engines. *See Celotex*, 477 U.S. at 324.

Finally, I find that partial summary judgment is warranted on Plaintiffs' breach of warranty claims as to all but the limited number of transmissions and engines for which it provided notice. Federal Rule of Civil Procedure 56(d)(1) empowers a court to "issue an order specifying what facts — *including what items of damages or other relief* — are not genuinely at issue" when summary judgment is not rendered on the whole action. *See* Fed. R. Civ. P. 56(d)(1) (2008) (emphasis added). Such items are treated as established in the action. *See id.*

In the instant case, I find that, because a seller is barred from any contractual remedy pertaining to goods that it accepted but for which it did not provide notice, and because there is no genuine dispute as to whether Plaintiff accepted Defendants' goods within the meaning of Article 2 or provided notice on any more than *seventy* of the transmissions or any more than *six* of the engines, Plaintiff's alleged damages pertaining to the *remaining* transmissions and engines are no longer genuinely at issue. *See* Colo. Rev. Stat. § 4–2–607(3)(a) (2007). Accordingly, I hereby grant Defendants' alternative motion for partial summary judgment as to potential damages arising from any alleged defects in these remaining transmissions and engines. *See* Fed. R. Civ. Pro. 56(d)(1) (2008).

### ii.     *Plaintiff's Inability to Prove Damages*

Defendants additionally argue that, even for those products for which Plaintiff provided notice, its breach of warranty claims fail because it cannot prove either direct or consequential

damages flowing therefrom. (*See* Def.'s Summ. J. Br. at 20–26.) Specifically, Defendants assert that: (1) Plaintiff cannot connect any alleged direct damages to specific products for which it provided notice; and (2) Plaintiff's proffered evidence relating to alleged damages in the form of lost profits is too speculative to survive summary judgment. (*See id.*) Because I have already found that Plaintiff cannot offer evidence relating to consequential damages — including lost profits — I need only consider Defendants' argument as it pertains to Plaintiff's alleged inability to link direct damages to specific products.

Under Article 2, "the measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damage of a different amount." Colo. Rev. Stat. § 4–2–714(2) (2007). Defendants contend that Plaintiff cannot prove direct damages under this provision because its accounting expert admitted in a deposition that he has no opinion regarding the difference in value of the transmissions and engines as delivered versus as warranted, and because Plaintiff admitted in interrogatory response that it cannot ascertain profits or losses from the sale of any particular motorcycle. (*See* Def.'s Summ. J. Br. at 21.) Plaintiff responds that the reimbursement it seeks for expenses incurred in repairing motorcycles built with JIMS products are "directly related to the defective engines or transmissions for which it admittedly provided notice." (*See* Pl.'s Summ. J. Resp. at 13–14.) Defendants reply that Plaintiff has proffered insufficient evidence to demonstrate a connection between any such expenses and particular products for which Plaintiff provided notice. (*See* Def.'s Summ. J. Reply at 4.)

First, I find Plaintiff's expert's lack of an opinion as to the difference in value between the products as warranted versus as delivered does not preclude Plaintiff from showing direct damages because the alleged expenses incurred in repairing the defective motorcycles may constitute "proximate damage of a different amount" than the difference in value between the products as warranted and as delivered. *See* Colo. Rev. Stat. § 4–2–714(2) (2007); *see also Comet Indus, Inc. v. Best Plastic Container Corp.*, 222 F. Supp. 723, 730–31 (D. Colo. 1963) (finding special damages recoverable on breach of special warranty claim where buyer incurred costs in adjusting and repairing a defective machine). Second, Defendants' protestations notwithstanding, I find Plaintiff proffered evidence sufficient to raise a triable issue of fact as to whether it sustained direct damages related to the products for which it provided notice. As Plaintiff's damage expert wrote:

> The December Rebuild Labor is [Plaintiff's] billing to [Defendants] for the time [Plaintiff's] employees assisted [Defendants'] employees in trying to repair the defective parts at [Plaintiff's] plant. This billing to [Defendants] was $21, 417.
> *       *       *
> Warranty Rebuild is the estimated amount incurred in warranty expenses related to the defective parts from [Defendants]. Through March 16, 2007, $39,373 in actual expenses were incurred and additional expenses are anticipated. It is anticipated that the total warranty rebuild expenses will be about $75,000.

(Pl.'s Summ. J. Resp., Ex. 8 at 5 [McKibben Report].) Although Plaintiff has pointed to no direct evidence of a connection between these rebuild expenses and any specific products for which it provided notice, I find that a reasonable jury could infer the existence thereof due to inherent likelihood that Plaintiff provided notice on those products for which it eventually incurred repair expenses, and vice versa. Moreover, even assuming that such an inference were impermissibly

speculative, I find that Defendants have failed to cite any law demonstrating the certitude with which a buyer must link alleged damages to the specific products for which it provided notice, and has therefore has failed to carry its initial burden of showing the insufficiency of Plaintiff's proffered evidence as a matter of law. *See Celotex*, 477 U.S. at 325 (stating that movant bears initial burden of showing absence of evidence to support the nonmoving party's case).

Accordingly, I find that Plaintiff's expert report — viewed in the light most favorable to Plaintiff — demonstrates a triable issue as to whether its alleged direct damages may be proximately related to the defects in particular JIMS products for which it provided notice.

### 4.     Conclusion

Based on the foregoing it is therefore ORDERED that:

1.     DEFENDANT THIESSEN's motion to dismiss (#47) is DENIED as moot;

2.     DEFENDANT THIESSEN'S motion for summary judgment (#70) is DENIED as duplicative of Defendants' renewed motion for summary judgement on Plaintiff's amended complaint (#99);

3.     DEFENDANT THIESSEN's motion to dismiss Plaintiff's amended complaint (#94) is GRANTED as to him without prejudice;

4.     DEFENDANTS' renewed motion for summary judgment on Plaintiff's amended complaint (#99) is DENIED, but their alternative motion for partial summary judgment is GRANTED; and

5.      DEFENDANTS' motion to dismiss as a sanction for discovery misconduct is DENIED, but their alternative motion for a lesser sanction is GRANTED, as detailed above.

The court will hold a Final Pretrial Conference commencing at 10:15 o'clock a.m. on March 27, 2008, in Courtroom A201 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.  In preparing for and participating in the conference, the parties and counsel will (1) follow the Instructions for Preparation and Submission of Final Pretrial Order, a copy of which can be downloaded from the court's web site, specifically

http://www.cod.uscourts.gov/Documents/Judges/EWN/ewn_fin_pre_ord_ins.pdf and (2) utilize the specific template located at

http://www.cod.uscourts.gov/Documents/Judges/EWN/ewn_fin_pre_ord.wpd  These specific web addresses should be used to insure that the proper format is observed.

Dated this 5th day of March 2008.

BY THE COURT:


<u>s/ Edward W. Nottingham</u>
EDWARD W. NOTTINGHAM
Chief United States District Judge