IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 06-cv-02527-PAB-BNB

THUNDER MOUNTAIN CUSTOM CYCLES, INC.,

    Plaintiff,

v.

THIESSEN PRODUCTS, INC.,

    Defendant,

and

JIM THIESSEN and
THIESSEN PRODUCTS, INC.,

    Counter Claimants,

v.

THUNDER MOUNTAIN HARLEY DAVIDSON, INC. and
THUNDER MOUNTAIN CUSTOM CYCLES, INC.,

    Counter Defendants.

---

### ORDER
---

Plaintiff and counterclaim defendant Thunder Mountain Custom Cycle, Inc. and counterclaim defendant Thunder Mountain Harley Davidson Inc. (collectively, "Thunder Mountain") have appealed this Court's final judgment in this case to the Tenth Circuit Court of Appeals. Still pending before this Court are several motions which are the subject of this Order. [Docket Nos. 186, 192, 226, 229, 230, 238].

## A. Factual and Procedural Background[1]

Thunder Mountain designs and manufactures custom motorcycles. It entered into contracts with defendant and counterclaim plaintiff Thiessen Products, Inc. ("Thiessen Products") to purchase transmissions and engines for use in Thunder Mountain's motorcycles. Thunder Mountain initiated the present case asserting that Thiessen Products breached express and implied warranties by furnishing defective products. Thiessen Products brought various contract and tort counterclaims against Thunder Mountain for its failure to pay for, or return, the allegedly defective items.

On May 13, 2008, a final judgement [Docket No. 150] was entered in this case summarizing the disposition of the claims and counterclaims as a result of the Court's March 5, 2008 Order and a bench trial which ended on May 6, 2008. The Court decided in favor of Thiessen Products on Thunder Mountain's warranty claims. The Court also decided in favor of Thiessen Products on its breach of contract counterclaim against Thunder Mountain, and dismissed all of Thiessen Products' remaining counterclaims. The Court entered judgment against counterclaim defendant Thunder Mountain Custom Cycles, Inc. in the amount of $231,236.19 and against counterclaim defendant Thunder Mountain Harley Davidson, Inc. in the amount of $931,047.86. In the final judgment, the Court also granted interest and costs to Thiessen Products.

On or around May 28, 2008, the automatic stay of judgment under Federal Rule of Civil Procedure 62(a) expired. Thunder Mountain did not move for a stay or present a supersedeas bond as required under Federal Rule of Civil Procedure 62(d) before

---

[1] A thorough recitation of the facts is available in the Court's March 5, 2008 Order [Docket No. 119].

2

that date. On June 10, 2008, Thunder Mountain filed its notice of appeal of the final judgment with this Court [Docket No. 153].

On June 25, 2008, Thiessen Products began executing the judgment and the Clerk of the Court issued writs of garnishment[2] to Farmer's Bank, Guaranty Bank, First National Bank, and New Frontier Bank requiring them to report and retain Thunder Mountain's funds or property in their possession in order to satisfy the judgment in this case [Docket Nos. 160, 161, 162, 163]. Between June 25 and July 2, 2008, writs of garnishment to the same four financial institutions were entered with the Court periodically. Of the four garnishees, three reported holding qualifying assets: Farmer's Bank held $241,307.37; New Frontier Bank held $168,622.34; and Guaranty Bank held $29,118.90. On June 30, 2008, Thiessen Products filed motions asking the Court to order Farmer's Bank and New Frontier Bank to release the garnished funds in their possession and deposit them in the court registry [Docket Nos. 169, 170].

On July 10 and 14, 2008, Thunder Mountain's new attorneys filed appearances in this case [Docket Nos. 178, 179]. On July 18, 2008, Thunder Mountain filed a motion asking the Court to stay the judgment and set a supersedeas bond [Docket No. 182]. The Clerk of the Court administratively terminated this motion, directing Thunder Mountain to re-file because it improperly joined the motion with its response in opposition to another motion then pending. On July 21, 2008, Thunder Mountain complied, filing a separate motion to stay and set a supersedeas bond [Docket No. 186].

---

[2] The writs in question were "Writs of Garnishment — Judgment Debtor Other Than Natural Person" pursuant to section 4 of Colorado Rule of Civil Procedure 103.

On July 23, 2008, the Court granted Thiessen Products' motions, ordering the garnished funds into the court registry [Docket Nos. 189, 190]. They were received into the court registry shortly thereafter. On July 24, 2008, in a series emails, counsel for the parties agreed upon an amount of a proposed supersedeas bond. The agreed-upon figure of $793,000, represented the total judgment with costs, minus the funds entered into the court registry. See Mot. to Apply Stay of J. Retroactively [Docket No. 238], ex. A. That same day, Thiessen Products voluntarily released the writ of garnishment against the $29,118.90 held by Guaranty Bank because "the matter [had] been settled in full by way of another writ of garnishment" [Docket No. 191]. Also on July 24, Thunder Mountain filed an amended version of its motion for stay and setting of a supersedeas bond, adjusting for the amount of garnished funds the Court ordered into the court registry on July 23, 2008 and reflecting the new $793,000 bond figure [Docket No. 192]. On August 1, 2008, Thunder Mountain filed notice with the Court that a supersedeas bond in the amount of $793,000 had been approved by a surety [Docket No. 195]. On August 15, 2008, the amended motion was fully briefed — including a sur-reply by Thiessen Products — but it has not been acted upon by the Court.

On October 28, 2008, two new writs of garnishment were executed, one of which was served on New Frontier Bank requiring it to report and retain any funds or property belonging to Thunder Mountain in its possession [Docket No. 225]. On October 29, 2008, responding in part to the new writs of garnishment, Thunder Mountain filed a motion for expedited ruling on the stay of judgment and supersedeas bond issues [Docket No. 226]. On October 21, 2008, the judge presiding over this case announced his resignation, effective October 29, 2008. On November 4, 2008, Thunder Mountain

filed a motion seeking expedited reassignment of the case so that the new judge could rule upon the stay and supersedeas bond questions [Docket No. 230].

On or about October 29, 2008, New Frontier Bank responded to the October 28, 2008 writ, reporting that it held $41,225.23 belonging to Thunder Mountain. On November 4, 2008, Thiessen Products filed a motion for release of funds requesting the court to order New Frontier to deposit this money in the court registry [Docket No. 229].

On November 5, 2008, not having received a ruling on its motion from the district court, Thunder Mountain filed a motion with the Court of Appeals seeking a stay of the judgment and the setting of a supersedeas bond [Case No. 08-1212, Document No. 9609989]. That same day, the Court of Appeals, pursuant to Federal Rule of Appellate Procedure 8, granted Thunder Mountain's motion to stay this Court's May 13, 2008 judgment and instructed this Court to file the supersedeas bond in the amount of $793,000 [Case No. 08-1212, Document No. 9610120]. On November 5, 2008, this case was reassigned.

Lastly, on November 11, 2008, Thunder Mountain filed a motion asking this Court to apply the Appeals Court's stay of the judgment retroactively [Docket No. 238]. By that motion, Thunder Mountain requests that the Court quash the two writs of garnishment entered on October 28, 2008, and order New Frontier Bank to immediately release Thunder Mountain's retained funds. All of the pending motions discussed above are ripe for review.

### B. Legal Standards and Analyses

As an initial matter, I address the effect of the pending appeal on this Court's jurisdiction to address the aforementioned motions. It is well-settled that once a case

has been appealed, the district court is divested of jurisdiction. *Garcia v. Burlington N. R.R. Co.*, 818 F.2d 713, 721 (10th Cir. 1987). "Although filing notice of appeal generally divests the district court of jurisdiction over the issues on appeal, the district court retains jurisdiction over collateral matters not involved in the appeal." *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998) (citations and internal quotation marks omitted).

The issues presented by the motions cited above are not the subject of Thunder Mountain's appeal. Rather, they deal with collateral matters that this Court is empowered to address.

### 1. Motions to Stay and Set Supersedeas Bond

I turn first to Thunder Mountain's motions for a stay and the setting of a supersedeas bond [Docket Nos. 186, 192] and the motions asking for expedited treatment of these issues [Docket Nos. 226, 230]. The Court of Appeals order granting the stay and ordering to this Court to accept the supersedeas bond renders each of these motions moot. Accordingly, they are all denied.

### 2. Motion to Retroactively Stay Execution of Judgment and Quash Writs of Garnishment

Next, I turn to Thunder Mountain's motion to apply retroactively the Appeals Court's stay of the judgment by quashing the October 28, 2008, writs of garnishment [Docket No. 238]. I address Thiessen Products' motion for release of funds [Docket No. 229] here as well because the outcomes of the two motions are closely connected.

The question of whether to apply a stay of judgment retroactively to invalidate previously undertaken execution efforts has provoked considerable consternation in

federal courts around the country. To date, courts remain divided on the issue, *see Phansalkar v. Andersen Weinroth & Co.*, 211 F.R.D. 197, 200–01 (S.D.N.Y. 2002), and I find no discernible trend or majority approach. There are several courts that allow the retroactive application of stays of judgment. *See G.G. Marck & Assocs. v. Peng*, No. 3:05 CV 7391, 2008 WL 918435, at *1–2 (N.D. Ohio Apr. 1, 2008); *Blue Mountain Envtl. Mgmt. Corp. v. Chico Enters., Inc.*, No. Civ.A.01-460, 2005 WL 2304999, at *1 n.2 (W.D. Pa. Sept. 21, 2005); *Phansalkar*, 211 F.R.D. at 201–03; *United States v. York*, 909 F. Supp. 4, 10–11 (D.D.C. 1995); *Sheldon v. Munford, Inc.*, 128 F.R.D. 663, 665–66 (N.D. Ind. 1989); *Ascher v. Gutierrez*, 66 F.R.D. 548, 549 (D.D.C. 1975). There are also several courts that do not allow retroactive application of stays of judgments. *See Ribbens Int'l, S.A. de C.V. v. Transport Int'l Pool, Inc.*, 40 F. Supp. 2d 1141, 1144 (C.D. Cal. 1999); *Laborers Nat'l Pension Fund v. ANB Invest. Mgmt. & Trust Co.*, 26 F. Supp. 2d 1048, 1051 (N.D. Ill. 1998); *Moses v. K-Mart Corp.*, 922 F. Supp. 600, 605 (S.D. Fla. 1996), *aff'd in part and rev'd in part*, 136 F.3d 140 (11th Cir. 1998) (unpublished table opinion); *Johns v. Rozet*, 826 F. Supp. 565, 568 (D.D.C. 1993); *In re Bucyrus Grain Co., Inc.*, 127 B.R. 52, 55 (D. Kan. 1991); *Secure Eng'g Servs., Ltd. v. Int'l Tech. Corp.*, 727 F. Supp. 261, 264–65 (E.D. Va. 1989); *Larry Santos Prods. v. Joss Org., Inc.*, 682 F. Supp. 905, 906 (E.D. Mich. 1988).

The courts allowing retroactive application of stays of judgments tend to do so because of the purported rationales behind Rule 62(d)'s bond requirement and for equitable reasons. *See, e.g., Ascher*, 66 F.R.D. at 549; *Phansalkar*, 211 F.R.D. at 201–03. Rule 62(d) is intended to preserve the status quo. *See Sheldon*, 128 F.R.D.

at 665–66. Rule 62's stay provision protects judgment debtors by preventing undue hardship caused by executions on judgments and avoids the sometimes impossible task of recouping transferred assets if there is a reversal on appeal. See Ascher, 66 F.R.D. at 549; Phansalkar, 211 F.R.D. at 202–03. The bond provision protects judgment creditors by ensuring that they will be compensated without additional efforts and by insulating them from the possibility that judgment debtors will become insolvent before the appeal is concluded. See Sheldon, 128 F.R.D. at 665.

With an eye toward these rationales, courts are more inclined to grant retroactive application of stays where they result in protection for the judgment creditor in excess of the judgment. Courts are particularly willing to grant retroactive effect where the excess coverage is due to delays in the posting of the bond caused by circumstances other than those created by the judgment debtor. See, e.g., Phansalkar, 211 F.R.D. at 201 (distinguishing cases that deny retroactive application of stays where judgment debtors were inexcusably remiss in or intentionally delayed seeking a stay); G.G. Marck & Assocs., 2008 WL 918435, at *1 (same).

Those courts that deny retroactive application of stays of judgments tend to cite a lack of perceived legal authority and invoke principles of equity. See, e.g., Ribbens Int'l, 40 F. Supp. 2d at 1144 (holding that the "clear and unambiguous" language of Rule 62 "cannot be read to give the supersedeas bond retroactive application regarding pre-existing levies"); Secure Eng'g Servs., 727 F. Supp. at 265 (concluding that the court lacked the authority to stay garnishment proceedings that occurred outside of Rule 62(a)'s ten-day automatic stay period); Larry Santos Prods., 682 F. Supp. at 906

(expressing concern that allowing retroactive stay of judgment executions would lead to inequitable harms to the judgment creditor).

The parties have not offered and I have not found a case from this Court or the Tenth Circuit Court of Appeals deciding the issue of the retroactivity of stays of judgments.[3] The Tenth Circuit however, has invoked the same rationale underlying Rule 62(d) relied upon by several courts endorsing retroactivity. *Olcott v. Delaware Flood Co.*, 76 F.3d 1538, 1559 (10th Cir. 1996); *Grubb v. F.D.I.C.*, 833 F.2d 222, 226 (10th Cir. 1988) ([T]he rationale for requiring a bond pending appeal . . . is to secure the judgment throughout the appeal process against the possibility of the judgment debtor's insolvency."). The Tenth Circuit also has expressed its disapproval of redundant protection of judgment creditors in light of this rationale. *See Olcott*, 76 F.3d at 1560 (exonerating bond that provided coverage in excess of the judgment). These opinions support the retroactive application of stays of judgment as long as the judgment creditor is otherwise sufficiently protected.

With regard to this Court's legal authority to quash writs of garnishment, a federal court "has continuing jurisdiction to protect and enforce its judgments." *York*, 909 F. Supp. at 9; *see also Riggs v. Johnson County*, 73 U.S. (6 Wall.) 166 (1867) ("[T]he jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until that judgment shall be satisfied."). That authority can be impacted by Federal Rule of Civil Procedure 69 which governs executions of judgments in federal courts. *See*

---

[3] In *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 538, 540 (10th Cir. 2000), the Tenth Circuit, although not specifically endorsing the district court's decision to quash writs of garnishment upon approval of a subsequent supersedeas bond, did not question it either.

9

Fed. R. Civ. P. 69(a)(1) ("The procedure on execution — and in proceedings supplementary to and in aid of judgment or execution — must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."). Courts disagree whether state law, federal law, or both control a federal court's ability to apply stays of judgments retroactively. *Compare Ribbens Int'l*, 40 F. Supp. 2d at 1144 (concluding that state law is irrelevant to the question of retroactivity of stays because Federal Rule 62(d) governs), *with Laborers Nat'l Pension Fund*, 26 F. Supp. 2d at 1051 (concluding that neither federal not state law expressly allow retroactive stay of initiated supplementary proceedings), *and Secure Eng'g Servs.*, 727 F. Supp. at 265 (apparently holding that neither 62(d) nor state law — perhaps in conjunction with 62(f) — permit the court to apply a retroactive stay).

I agree with the court in *Ribbens International* that the retroactivity question is a matter of federal law, for it deals not with the execution of a judgment itself, but rather with the effect of a supersedeas bond. *See Ribbens Int'l*, 40 F. Supp. 2d at 1143–44. However, the point is not essential in the current case because I find no conflict with Colorado law in applying a stay of judgment retroactively. Colorado courts have quashed improper writs of garnishment without reference to any statutory power. *See, e.g., Law Offices of Andrew L. Quiat, P.C. v. Ellithorpe*, 917 P.2d 300, 304–05 (Colo. App. 1995) (holding writ of garnishment may be quashed where it attempts to reach assets not reachable by judgment debtor). Furthermore, Colorado Rule of Civil Procedure 103 requires that "[t]he judgment creditor shall refund to the clerk of the court any disbursement in excess of the amount necessary to satisfy the judgment."

C.R.C.P. 103(4)(f). The same result sought by Rule 103(4)(f) is achieved by quashing a writ of garnishment that would lead to payment in excess of the judgment amount.

Under federal law, a district court has extensive equitable powers to revisit its orders where justice so requires. See, e.g., Fed. R. Civ. P. 59 (regarding new trials); Fed. R. Civ. P. 60 (regarding amending final judgments, orders, and proceedings); Houston Fearless Corp. v. Tetter, 313 F.2d 91, 92 (10th Cir. 1962) ("No rule of which we are aware limits the plenary power of a federal district court which has made an interlocutory order to grant such relief from that order as justice requires while the case is pending before it."). Although Rule 62 does not explicitly allow for the retroactive stay of execution efforts, the Court's equitable powers should and do allow me to nullify an improvidently executed writ of garnishment.

Courts' repeated references to issues of fairness surrounding the retroactive application of stays of judgments demonstrate the equitable underpinnings of this decision. In fact, equitable considerations are paramount in this context. Without specifically stating as much, courts essentially often hold the judgment debtor to a good faith standard in acquiring a stay of judgment.

For example, several courts allowing retroactive application of stays of judgments have noted that the delay in acquiring the stay did not result from the judgment debtor's intent or actions. See, e.g., G.G. Marck & Assocs., 2008 WL 918435, at *1 (noting that "Defendants did not intentionally delay the filing of the bond"); Phansalkar, 211 F.R.D. at 201–02 (delay in obtaining stay resulted from actions of Clerk of the Court, misstatement of a federal treatise, and actions of judgment creditor,

not because of dilatoriness of the debtor); York, 909 F. Supp. at 11 (noting that "the equities in this case weigh in favor a granting the relief sought by the defendants" in part because they took reasonable steps in advance of the execution efforts at issue).

At the same time, several courts denying retroactive application cite the judgment debtor's culpability in the delay in acquiring a stay of judgment. See, e.g., Laborers Nat'l Pension Fund, 26 F. Supp. 2d at 1051 (noting that judgment debtor failed to timely seek stay prior to judgment creditor's execution efforts despite fact that judgment creditor allowed it over two months additional time to file); Moses, 922 F. Supp. at 604 (admonishing judgment debtor for sitting back while judgment creditor underwent the expense of collecting on a judgment and then attempting to invalidate those efforts at the last second with a supersedeas bond); In re Bucyrus Grain Co. 127 B.R. at 55 (denying retroactive effect where judgment debtor waited over two years to file its motion to stay judgment); Secure Eng'g Servs., 727 F. Supp. at 265 (finding equities weigh in favor of no retroactive stay where judgment debtor inexplicably delayed in seeking stay); Larry Santos Prods., 682 F. Supp. at 906 ("[A]llowing retroactive stays would enable a judgment debtor to delay the filing of a bond until threatened by the efforts of a creditor to execute upon the judgment, and then benefit from the bond as though it had been filed before execution was attempted.").

With so many courts exploring the judgment debtor's behavior in seeking a stay of judgment when determining whether to apply a stay of judgment retroactively, I believe the better rule embraces these considerations. Bright line rules either allowing or prohibiting retroactive stays will lead to inequitable results. Indeed, some of the

courts that have held that a retroactive stay was inappropriate in the particular case before them conceded that a case may arise where it would be appropriate. See *Laborers Nat'l Pension Fund*, 26 F. Supp. 2d at 1052 n.4; *Larry Santos Prods.*, 682 F. Supp. at 906–07 (where disallowing retroactive stay would result in "manifest injustice"). Therefore, I conclude that the appropriate rule is that executions on judgments that (1) occur while the judgment debtor is seeking a stay of the judgment in good faith and (2) result in excess protection for the judgment creditor, may be retroactively invalidated. This rule allows for retroactive stays where the judgment debtor is unable to attain a stay through no fault of its own, yet denies it where the judgment debtor is dilatory and purposeful in its delay.

The present case illustrates the good faith distinction. The Court issued the final judgment on May 13, 2008. Thunder Mountain did not seek a stay of the judgment during the ten-day automatic stay period established by Federal Rule of Civil Procedure 62(a). However, the inquiry does not end there because a party may seek a stay outside of that period as long as it is before the *entire* judgment has been executed. See Fed. R. Civ. P. 62(b) ("The [supersedeas] bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal."); *In re Leach*, CIV. A. No. 89-2042A-S, 1989 WL 134600, at *1 (D. Kan. Oct. 12, 1989) (citing *United States v. $2,490.00 in U.S. Currency*, 825 F.2d 1419, 1420–21 (9th Cir. 1987)).

Thiessen Products first sought to collect on its judgment in late June and early July 2008, prior to any of Thunder Mountain's motions for stay of the judgment. More than two weeks after Thiessen Products moved to have the garnished funds deposited

with the court registry, Thunder Mountain filed its first motion for a stay of the judgment [Docket 182]. In the week that followed, Thunder Mountain twice updated its motion for stay of the judgment [Docket Nos. 186, 192]. Thiessen Products ceased its execution efforts as of the date of the latter update and even voluntarily released a writ of garnishment served on Guaranty Bank. On August 1, 2008, Thunder Mountain filed notice with this Court that it had acquired approval of a bond from a surety in the amount agreed upon by the parties and was awaiting approval by the court in order to submit it [Docket No. 195]. By August 15, 2008, Thunder Mountain's motion for a stay of judgment and setting of a supersedeas bond was fully briefed.[4]

During Thiessen Products' June-July execution efforts, Thunder Mountain had not in good faith sought a stay of the judgment. As a result, those writs of garnishment should not be quashed. However, I find that at least beginning with the August 1, 2008, notice of bond, Thunder Mountain sought a stay in good faith. Therefore, on October 28, 2008, when Thiessen Products attempted to reinitiate execution on the judgment, Thunder Mountain had already begun its good faith efforts at acquiring a stay. By October 29, 2008, the day all parties received notice of Thiessen Products' newest execution efforts, Thunder Mountain filed its emergency motion to expedite ruling on its motion to stay the judgment. On November 4, 2008, after receiving notice from garnishee New Frontier Bank that it held funds belonging to Thunder Mountain, Thiessen Products filed a motion for release of those funds into the court registry. That same day, Thunder Mountain filed another emergency motion, this time to expedite

---

[4] Thunder Mountain filed its reply in support of its motion on August 5, 2008 [Docket No. 201], fifteen days before it was due per local rule.

reassignment of the case following the resignation of the previously presiding judge. Thunder Mountain sought reassignment of the case so that the new judge could address the motion to stay judgment as soon as possible. The next day Thunder Mountain sought and was granted the stay by the Appeals Court. These facts lead me to conclude that Thunder Mountain continued its good faith efforts at acquiring a stay of judgment after August 1, 2008.

In short, I find that prior to the execution of Thiessen Products' October writs of garnishment, Thunder Mountain pursued a stay of judgment in good faith and that Thiessen Products is otherwise fully protected in the judgment.[5] Therefore, the October writs of garnishment are quashed. This result renders moot Thiessen Products' motion [Docket No. 229] to release the funds held under this writ, and accordingly that motion is denied.

### 3. Funds Currently Held in the Court Registry

Thiessen Products asks this Court to order the funds currently held in the court registry be distributed to it. The funds were the result of Thiessen Products' first round of execution efforts. On July 23, 2008, the Court ordered these funds into the court registry [Docket Nos. 189, 190]. On July 30, 2008, the Court ordered the Clerk of the Court not to disburse these funds pending the outcome of Thunder Mountain's motion to stay the judgment [Docket No. 194]. That Order remains in place until the Court orders otherwise.

---

[5] I am aware that courts are permitted to set the supersedeas bond in excess of the judgment amount. See Burghart v. Frisch's Restaurants, Inc., 865 F.2d 1162, 1163 (10th Cir. 1989). However, Thiessen Products has not requested bond protection in excess of the current amount, nor has the Court provided it.

Thiessen Products' request for distribution of funds is not properly considered a motion since it appeared in a footnote to its reply in support of another motion [Docket No. 242]. See D.C.COLO.LCivR 7.1C ("A motion shall not be included in a response or reply to the original motion. A motion shall be made in a separate paper."). Despite the procedural impropriety of such a request, in the interest of clarity, I note that the funds already released by garnishees into the court registry pursuant to order of this Court [Docket Nos. 189, 190] are to remain in the court registry and not be disbursed until further order of the Court. See 28 U.S.C. § 2042 (2008) ("No money deposited under section 2041 of this title shall be withdrawn except by order of court."); Fed. R. Civ. P. 67(b).

Thiessen Products argues that disbursement under section 4 of Colorado Rule of Civil Procedure 103 mandates that the funds be distributed as a matter of course. Rule 103 states: "The clerk of the court shall disburse any funds in the registry of court to the judgment creditor without further application or order and enter such disbursement in the court records." C.R.C.P. 103(4)(f). In case it was otherwise in doubt, Federal Rule of Civil Procedure 69, which directs federal district courts to defer to state execution law, excepts those instances where a federal law governs. Fed. R. Civ. P. 69(a). With regard to disbursements, federal law in section 2042 and Rule 67(b) require an order of the Court before a disbursement is made from the court registry. As a result, the disbursement language in Colorado Rule of Civil Procedure 103 is superseded.

Furthermore, I believe the stay issued by the Court of Appeals precludes me from ordering disbursement of the funds currently held by the Court. Even if I were

permitted to disburse the funds, I would not in this case, for in keeping with the policy behind stays in execution I conclude that the status quo is best maintained by halting any movement of funds until the appeal is concluded.

C. **Conclusion**

It is therefore

**ORDERED** that plaintiff and counterclaim defendants' motions to stay judgment pending appeal and to set a supersedeas bond [Docket Nos. 186, 192] are DENIED as moot. It is further

**ORDERED** that plaintiff and counterclaim defendants' motion to expedite ruling [Docket No. 226] and motion to expedite transfer of the case [Docket No. 230] are DENIED as moot. It is further

**ORDERED** that plaintiff and counterclaim defendants' motion to apply the stay of judgment retroactively, quash the writs of garnishment, and return excess funds [Docket No. 238] is GRANTED. The writs of garnishment [Docket Nos. 224, 225] are quashed and shall no longer be in effect. It is further

**ORDERED** that defendant/counterclaim plaintiff's motion to release funds [Docket No. 229] is DENIED. Furthermore, funds that already have been deposited in the court registry shall not be disbursed until otherwise ordered by this Court.

DATED this 29th day of December, 2008.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

17